IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CATHERINE WILLIAMS, et al. § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:18-CV-0517-D |
| VS. § | |
| § | |
| SAKE HIBACHI SUSHI & BAR, INC., § | |
| et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this conditionally-certified collective action seeking unpaid overtime pay pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, plaintiff Catherine Williams ("Williams"), individually, and on behalf of all others similarly situated under 29 U.S.C. § 216(b) ("class members"), moves for a protective order and corrective notice. Defendants have not responded to the motion. For the following reasons, the court grants the motion in part and denies it in part.

I

In March 2018 Williams, on behalf of herself and putative class members, filed a complaint against Sake Hibachi Sushi & Bar, Inc. and Wen Qin Lu pursuant to § 216(b) of the FLSA. Williams alleges, *inter alia*, that defendants failed to pay her and the class members the federally-mandated minimum wage, in violation of the FLSA. Defendants answered in April 2018, and, shortly thereafter, Williams moved to conditionally certify this suit as a collective action. In May 2018 the court granted Williams' motion for conditional

certification; ordered defendants to provide Williams' counsel the names, addresses, and telephone numbers of all current and former servers employed by defendants at any time from March 5, 2016 to the present ("potential class member list"); ordered Williams to mail the notice and form to the employees whom defendants had identified; and ordered that each employee who received notice had 60 days from the date the notice was sent to file written consent to join the civil action as a party-plaintiff.

Before producing the potential class member list to Williams' counsel—but after the court's May 2018 order—defendants began contacting and soliciting members of the putative class to sign agreements purporting to "release any and all liability . . . or suits, including any right to opt-in to a class action suit under the [FLSA], which [they] may have against [defendants]." *See, e.g.,* Ps. App. 20 (the first of 11 signed settlement agreements between defendants and employees listed on the potential class member list). Williams' counsel learned of defendants' contacts with the potential class members and emailed defendants' counsel on June 8, 2018 regarding the communications and agreements. The evidence is uncontroverted that, despite this email, defendants continued to contact and solicit releases from potential class members before producing the potential class member list to Williams' counsel. On June 12, 2018 defendants produced the potential class member list to Williams' counsel. Three days later, Williams mailed notice to the current and former employees identified on the potential class member list. Before the class notice was sent, defendants obtained signed settlement agreements from at least 11 potential class members. *See* Ps. App. 20-30.

In July 2018 Williams filed the instant motion for protective order and corrective notice, seeking an order:

> 1) declaring the . . . Settlement Agreements . . . obtained by [defendants] to be null and void; 2) prohibiting Defendants from soliciting additional Agreements or otherwise communicating with potential class members regarding the lawsuit and any of the issues raised by this action; 3) authorizing [Williams] to resend the Corrective Notice and Consent Form attached as Exhibit 1 to [the] motion to potential class members; 4) authorizing [Williams] to notify potential class members that any Agreements signed by potential class members are null and void and do not affect their right to participate in this action (such notice to be included in the notice to class members of their right to participate in this action[)]; 5) extending the "opt-in" period for potential class members for an additional sixty (60) days from the date of the corrective notice mailing; and 6) awarding [Williams] her costs and reasonable attorneys' fee[s] associated with this motion.

Ps. Mot. Protective Order 13. Defendants have not responded to the motion.

II

Courts have broad authority to govern the conduct of counsel and parties in FLSA collective actions. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989); *Vogt v. Tex. Instruments Inc.*, 2006 WL 4660133, at *2 (N.D. Tex. Aug. 8, 2006) (Lindsay, J.); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (discussing court's duty in context of Rule 23 class actions). This authority exists because FLSA cases present significant opportunities for abuse, most often in the form of improper communications that undermine the collective action process. *See Pacheco v. Aldeeb*, 127 F.Supp.3d 694, 697 (W.D. Tex. 2015) (citing *Gulf Oil*, 452 U.S. at 100); *see also Griffin v. Aldi, Inc.*, 2017 WL

1957021, at *3 (N.D.N.Y. May 11, 2017).[1]

The court, for example, has the power to regulate communications between a party and absent class members that are "misleading, coercive, or an attempt to undermine the collective action," *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667-68 (E.D. Tex. 2003), although the court's discretion in this respect is "not unlimited," *Gulf Oil*, 452 U.S. at 100; *see also Pacheco*, 127 F.Supp.3d at 697. In fact, communications that are litigation-neutral need not be restricted, and no communications restrictions should be made "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Pacheco*, 127 F.Supp.3d at 698 (quoting *Gulf Oil*, 452 U.S. at 102); *see also Wu v. Pearson Educ. Inc.*, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011) ("In general, communications that are litigation-neutral—that do not alter the legal relationship between the defendants and members of a putative class—are not subject to restriction.").

In the Fifth Circuit, district courts have applied a two-part test for determining whether to issue an order impacting a party's speech with absent class members. *See Vogt*, 2006 WL 4660133, at *3 (outlining a "two-part test" from *Belt*, 299 F.Supp.2d at 668); *see also Farrow v. Ammari of La., Ltd*, 2017 WL 2812930, at *9 (E.D. La. June 29, 2017) (substantively applying test); *Velazquez v. FPS LP*, 2014 WL 1758214, at *3 (S.D. Tex. Apr.

---

[1]Like the cases cited, the Supreme Court of the United States has applied the conduct governance principles of Fed. R. Civ. P. 23 class actions to § 216(b) collective actions. *See Hoffman-La Roche*, 493 U.S. at 171 (citing *Gulf Oil* and noting that the "same justifications" for "governing the conduct of counsel and the parties" in order to mitigate "the potential for abuse" apply in collective actions brought under § 216(b)).

28, 2014) (same). First, the court determines whether there is a need for a restriction on speech by evaluating whether the party's speech is "misleading, coercive, or an attempt to undermine the collective action." *Vogt*, 2006 WL 4660133, at *3 (quoting *Belt*, 299 F.Supp.2d at 668). Second, if such a need exists, the court then "tailor[s] appropriate injunctions and sanctions in light of First Amendment concerns." *Id.*

III

Although defendants have not responded to Williams' motion, considering the limitations on the court's discretion (driven primarily by First Amendment concerns) and the nature of the sanctions that Williams asks the court to impose,[2] the court will independently engage in the two-part test outlined in *Vogt* and *Belt*.

A

Williams contends that the settlement agreements that defendants initiated are misleading, coercive, and designed to discourage potential class members from joining the collective action.[3] Having reviewed the settlement agreements and the pertinent case law, the court agrees.

1

Williams maintains that the settlement agreements are misleading because

---

[2] See *infra* § III(B) for a discussion of the remedies that Williams seeks.

[3] Williams also maintains, *inter alia*, that the settlement agreements are "void, unenforceable, and prohibited by statute and case law." Ps. Mot. Protective Order 10. The court views this assertion as one that is better addressed after determining whether the communications require limitation.

"Defendants failed to inform the potential class members of the proper method of calculating their unpaid wages," and because the settlement agreements themselves "fail to mention the available damages recoverable by potential class members, including liquidated damages and attorney's fees." Ps. Mot. Protective Order 10. The text of the settlement agreements, as filed by Williams, supports these assertions.

The court also finds that the settlement agreements neglect to mention the instant case by name or to give the putative class members any other information that would allow them to make an informed decision to waive their rights. Absent evidence to the contrary, these failures, in addition to the failure to provide sufficient information regarding damages, lead to the conclusion that the settlement agreements constitute misleading communications. *See Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 WL 4466605, at *1 (C.D. Cal. Sept. 27, 2012) (finding a waiver misleading where it did not include, *inter alia*, any information regarding the class action, the complaint, or plaintiff's counsel's contact information); *Cty. of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (explaining that communication was misleading for various reasons, including failure to inform potential class members about actual effects of damages methodology); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, 2001 WL 1035132, at *5 (S.D.N.Y. Sept. 7, 2001) (deeming proposed release notice inadequate where it did not state, *inter alia*, who may be in the class, whether a class was certified, information about the status of the action, or information about how a potential class member might obtain more details about the case or contact plaintiff's counsel).

Williams also posits that the settlement agreements are coercive because the communications took place in the employment context, with an employer soliciting settlement agreements from employees. Williams cites several cases to support the proposition that "[c]oercion of potential class members by the class opponent may exist where both parties are 'involved in an ongoing business relationship.'" *E.E.O.C. v. Morgan Stanley & Co.*, 206 F.Supp.2d 559, 562 (S.D.N.Y. 2002) (quoting *Ralph Oldsmobile*, 2001 WL 1035132, at *3), *aff'd sub nom. E.E.O.C. v. Morgan Stanley & Co.*, 2002 WL 1431685 (S.D.N.Y. July 1, 2002); *see also Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (Boyle, J.). Due to the nature of FLSA actions (providing employees recourse against employers), the threat of coercion is often high, and that threat is a common justification for communication restrictions between the putative class and defendant employers. *See, e.g., Belt*, 299 F.Supp.2d at 668; *Hampton Hardware*, 156 F.R.D. at 633.

In this case, given the definition of the conditionally certified class as all current or former servers employed by the defendants at any time from March 5, 2016 to the present, it is highly possible—indeed, it is both probable and unrefuted—that the putative class includes current employees of defendants who are involved in an ongoing (and likely imbalanced) business relationship with defendants. The text of the settlement agreements supports this. *See, e.g.,* Ps. App. 20 (stating "some employees have concerns regarding payment," "we value our employees," and "no action will be taken against you or regarding your current employment status (if applicable) based on whether or not you sign this

agreement"). Moreover, as explained *supra* at § III(A)(1), the settlement letter does not give the class members any information about the instant action, but simply says that "[defendants] have become aware that some employees have concerns regarding payment and/or calculation of their tips and wages." *See id.*; *see also Wu*, 2011 WL 2314778, at *6 ("[A] communication may be coercive where the defendant interferes with participation by potential class members in the lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation.").

The employer-employee relationship and failure to give the potential class members accurate, impartial information regarding their rights in this case—which had already been conditionally certified at the time of contact—leads the court to find that the settlement agreements are coercive.[4]

3

Williams next contends that the motive behind the settlement agreements was to undermine the collective action and reduce the number of opt-ins. Because defendants were presenting the potential class members with settlement agreements and not another form of litigation-neutral communication, it is difficult to conclude that defendants' motive was anything other than an attempt to undermine the collective action. *See Belt*, 299 F.Supp.2d at 669 (finding that defendant's letter "could have no purpose but to discourage absent class

---

[4]Although defendants do not make this argument (as noted, they have not responded to Williams' motion), their efforts to disclaim any retaliatory actions and to rely on the optional nature of the settlement agreements within the agreements' text "do not ameliorate [the other] bases of coercion." *See Belt*, 299 F.Supp.2d at 668 n.8.

members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns").

Further, as in *Belt*, the timing of defendants' contact and solicitation corroborates a motive to discourage absent class members from joining the suit. *See id.* In *Belt* the court drew attention to the fact that the letter in question was sent "the day before [the defendant] was to provide Plaintiff with the potential class members' mailing addresses for the Court-approved notice" and found this an "intentional[] attempt[] to undermine the Court-approved notice." *Id.* Similarly, Williams' unrebutted evidence shows that defendants largely contacted the putative class members before providing the class member list to Williams. *Compare* Ps. App. 20-30 (10 of 11 settlement agreements executed before June 12, 2018), *with* Ps. App. 17 (June 12, 2018 email from defendants' counsel producing potential class member list). And all signed settlement agreements are dated *before* Williams sent the court-ordered notice. *Compare* Ps. App. 20-30 (all settlement agreements executed before June 13, 2018), *with* Ps. Notice Mailing Class Notice (class notice mailed June 15, 2018).

4

Accordingly, the court holds that the settlement agreements that defendants obtained are the type of communication that the court has the authority and duty to restrict. The court finds that the settlement agreements meet the standards for restriction as improper communications with absent class members, because they are misleading, coercive, and an attempt to undermine the collective action. The court also finds that defendants' "conduct is more egregious in this collective action than it would be in a class action because potential

- 9 -

class members must opt-into the collective action rather than opt out as in a class action," and that defendants "attempted to undermine the Court-approved notice." *Belt*, 299 F.Supp.2d at 669; *see also Stransky v. HealthONE of Denver, Inc.*, 929 F.Supp.2d 1100, 1105-06 (D. Colo. 2013). Thus the court turns to appropriate remedies.

B

Courts have ordered a variety of remedial measures for misleading and improper communications, including prohibiting further *ex parte* communications, issuing corrective notices, extending the opt-in period, and awarding attorney's fees and costs. *See, e.g., Belt*, 299 F.Supp.2d at 669-70 (ordering all these measures); *Stranksy*, 929 F.Supp.2d at 1114 (prohibiting communications, issuing corrective notice, and awarding attorney's fees and costs).

Williams asks for all of the remedial measures outlined above and more. She also requests that the court declare void the settlement agreements that defendants obtained, and that the court authorize her to notify potential class members of this fact. The court addresses each of Williams' requested remedial measures in turn—bearing in mind that the goal is to "tailor appropriate injunctions and sanctions in light of First Amendment concerns." *Vogt*, 2006 WL 4660133, at *3 (quoting *Belt*, 299 F.Supp.2d at 668).

C

1

First, Williams requests that the court declare null and void the settlement agreements that defendants have already obtained. In support, she asserts that private settlements of

FLSA claims are void as a violation of public policy because the agreements have not been reviewed or approved by the court, and the U.S. Department of Labor did not participate in creating or soliciting the agreements. But Williams has failed to present evidence that any current or potential class members want to have their settlement agreements voided.[5] The court therefore denies Williams' request to declare the settlement agreements void and unenforceable.[6] *See Hall v. Burk*, 2002 WL 413901, at *3-4 (N.D. Tex. Mar. 11, 2002) (Sanders, J.) (denying plaintiff's motion to void releases where no signatories of the releases were plaintiffs in the class action); *accord Jin Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, 2018 WL 994706, at *9 (D. Kan. Feb. 21, 2018) (refusing to "invalidate over 300 releases where Plaintiff offer[ed] no evidence of any individuals wanting their releases invalidated"); *Ralph Oldsmobile*, 2001 WL 1035132, at *7 (declining to void releases that had been executed by potential class members because, *inter alia*, no signatory had asked the court to void the release). None of the cases Williams cites in her motion alters this conclusion, because none involved a scenario in which a party sought to invalidate an agreement to which she, or some other member of the class, was a signatory.

2

Second, Williams requests that the court prohibit defendants from soliciting additional

---

[5]Moreover, the court compared the names on the settlement agreements with the names of those plaintiffs who have opted-in and did not find any overlap.

[6]The court denies this request without prejudice to Williams' asserting anew the challenge to the settlement agreement's validity in the event a signatory to a settlement agreement opts-into this collective action.

settlement agreements or otherwise communicating with potential class members regarding the lawsuit and any of the issues raised by this action. Courts often consider additional factors when determining whether there is good cause to restrict *ex parte* communications with potential class members, including: "the severity and likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." *Hampton Hardware*, 156 F.R.D. at 633 (quoting *Kleiner*, 751 F.2d at 1206); *accord Pacheco*, 127 F.Supp.3d at 698.

In the instant case, the first factor (the perceived harm) suggests a need for restriction of *ex parte* communications with potential class members. As outlined *supra* in § III(A), potential class members may be current employees of defendants, and the only evidence before the court suggests that defendants' contacts to date have only worked to undermine the FLSA collective action. Communications regarding the action could thus be prohibited. Having considered the other factors (precision, alternatives, and duration), however, the court declines to issue a blanket restriction on defendants' *ex parte* communications with potential class members regarding the subject matter of this action. Rather, the court orders that defendants may communicate with potential class members regarding this action as long as, with each communication, they provide the potential class member a copy of this memorandum opinion and order; and a summary communications notice that explains that defendants have been found to have engaged in contacts that were misleading, coercive, and an attempt to undermine the purposes of this collective action.

The court grants Williams 21 days from the date of this memorandum opinion and

order to draft a proposed summary communications notice, determine whether defendants oppose the proposed notice, and submit the proposed notice to the court.

3

Third, Williams seeks authorization to resend a corrective notice and consent form to the potential class members. Corrective notice is one of the most common forms of relief that courts grant after finding that communications were misleading or coercive. *See, e.g., Belt*, 299 F.Supp.2d at 669-70; *Stransky*, 929 F.Supp.2d at 1110; *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007, at *7 (N.D. Ill. Nov. 9, 2001). The court finds that a corrective notice is warranted due to defendants' omission of pertinent, accurate case information from the settlement agreements.

The court therefore authorizes Williams to send corrective notice and consent forms to the potential class members. But the court does not authorize Williams to send her current proposed corrective notice and consent form. Instead, the court directs Williams to revise the proposed corrective notice in light of this memorandum opinion and order so that the corrective notice is consistent with it. The court grants Williams 21 days from the date of this memorandum opinion and order to revise the corrective notice, determine whether defendants oppose the proposed corrective notice, and submit the proposed revised corrective notice to the court.

4

Fourth, Williams requests that the court authorize her to notify potential class members that any settlement agreements that they have signed are null and void and do not

affect their right to participate in the action. Because the court is denying Williams' request to declare the settlement agreements void, the court also declines this requested relief. The court will, however, allow Williams to include in the corrective notice a statement that any potential class member who signed a settlement agreement may still opt-into this lawsuit, and, if the person so desires, challenge the validity of that settlement agreement. *See supra* note 6.

5

Fifth, Williams asks the court to extend the opt-in period for potential class members for an additional 60 days from the date of the corrective notice mailing. The court grants this relief. The original opt-in period was 60 days, and the addition of another 60 days does not exceed the bounds of common opt-in ranges. *See Arceo v. Orta*, 296 F.Supp.3d 818, 826 (N.D. Tex. 2017) (Fitzwater, J.) (citing *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015), which explained that "opt-in periods commonly range from as little as 30 to as many as 120 days").

6

Sixth, Williams seeks her costs and reasonable attorney's fees associated with the motion for protective order and corrective notice. Case law supports the imposition of attorney's fees for misleading and improper communications with potential class members. *See, e.g., Pacheco*, 127 F.Supp.3d at 699 (awarding reasonable attorney's fees and costs associated with sending corrective notice); *Stransky*, 929 F.Supp.2d at 1110-11 (same); *Belt*, 299 F.Supp.2d at 669-70 (same). The nature of defendants' conduct—contacting potential

class members before producing the potential class member list to opposing counsel and before the court-approved notice was issued—further supports an award of attorney's fees and costs to Williams. *See Stransky*, 929 F.Supp.2d at 1110-11 (awarding fees and costs because, *inter alia*, defendant "intentionally attempted to undermine the Court-approved notice," by purposely communicating with the potential class members prior to issuance of notice (quoting *Belt*, 299 F.Supp.2d at 669)).

If the parties cannot agree on the amount of reasonable attorney's fees and costs that Williams incurred in connection with her motion for protective order and corrective notice and with preparing and sending the summary communications notice, corrective notice, and consent form authorized by this memorandum opinion and order, Williams must apply for an award within 28 days of the date corrective notice is sent to potential class members.

\* \* \*

For the foregoing reasons, Williams' motion for a protective order and corrective notice is granted in part and denied in part. Because the court has extended the opt-in period for potential class members, Williams' August 21, 2018 motion for leave to file notice of consent after deadline, to which defendants have not responded, is denied without prejudice as moot.

**SO ORDERED**.

September 21, 2018.

                                                      _____
                                                      SIDNEY A. FITZWATER
                                                      UNITED STATES DISTRICT JUDGE