IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHERINE WILLIAMS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:18-CV-0517-D |
| VS. | § | |
| | § | |
| SAKE HIBACHI SUSHI & BAR INC., | § | |
| et. al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Following a bench trial in this collective action seeking unpaid minimum wages and related relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendants move for judgment as a matter of law under Fed. R. Civ. P. 50(a). Plaintiffs move for attorney's fees and costs under 29 U.S.C. § 216(b), and also move for an award of a service fee to named plaintiff Catherine Williams ("Williams"). For the reasons that follow, the court construes defendants' motion for judgment as a matter of law to be a motion for judgment on partial findings under Rule 52(c) and grants the motion; grants plaintiffs' motion for nontaxable litigation expenses; grants plaintiffs' motion for an award of a service fee; denies their motion for taxable costs (without prejudice to their applying to the clerk for taxation of such costs); and grants in part and denies in part their motion for attorney's fees.

I

The court assumes the parties' familiarity with its previous memorandum opinion and order in this case, *see Williams v. Sake Hibachi Sushi & Bar, Inc.*, 2020 WL 3317096 (N.D. Tex. June 18, 2020) (Fitzwater, J.), and limits its discussion of the background facts and procedural history to what is necessary to understand this decision.

Plaintiffs in this collective action are current and former servers at Sake Hibachi Sushi & Bar. On March 5, 2018 Williams brought this putative collective action on behalf of herself and all others similarly situated against defendants under 29 U.S.C. § 216(b). Williams alleged, *inter alia*, that defendants failed to pay her and the class members the federally-mandated minimum wage, in violation of 29 U.S.C. §§ 206 and 215(a). According to plaintiffs, defendants violated § 206 by paying them an hourly wage of only $2.15 per hour while also requiring them to pay a portion of their tips into a "tip pool" that was redistributed in part to their employer, Sake Hibachi Sushi & Bar, Inc. ("Sake"), and other non-tipped employees.

On June 18, 2020 the court granted plaintiffs' motion for partial summary judgment. The court held, in relevant part, that plaintiffs were entitled to summary judgment with respect to Sake's tip credit affirmative defense because Sake failed to adduce evidence that it informed plaintiffs of the tip credit provision. *See Williams*, 2020 WL 3317096, at *4. The court also held that plaintiffs were entitled to summary judgment on the tip credit defense because Sake failed to refute plaintiffs' evidence that defendants retained a portion of the plaintiffs' tips and shared them with employees that did not customarily receive tips. *Id.*

- 2 -

On June 29, 2021 defendants filed a motion *in limine* seeking to exclude from trial any evidence of the amount of tips withheld from plaintiffs.[1]  The court denied this motion without prejudice.  It noted that defendants could move for judgment as a matter of law,[2] and, if defendants prevailed on that motion, the court could disregard any award of damages to plaintiffs that was improper.

On July 8, 2021 the parties orally stipulated that plaintiffs were owed $55, 671.29 in unpaid minimum wages, and that this amount should also be liquidated pursuant to § 216(b). On July 11, 2021 the parties entered a Joint Stipulation, in which they agreed that the amount of tips withheld was $55,000.  In this Joint Stipulation, defendants reserved the right to challenge whether plaintiffs were legally entitled to recover the withheld tips.

On July 12, 2021 the parties waived a jury, and the court found in favor of plaintiffs in a bench trial.  At trial, defendants orally moved for judgment as a matter of law, and the court denied the motion without prejudice.  The court then entered a judgment awarding plaintiffs the sum of $55,671.29 for unpaid minimum wages, together with liquidated damages in the sum of $55,671.29.  The court also ordered that plaintiffs recover the sum of $8,466.35 for the employer's share of FICA tax.  At issue now, the judgment awarded plaintiffs the sum of $55,000.00 for misappropriated tips, together with liquidated damages

---

[1]At that point the case was still to be tried to a jury, so a motion *in limine* was procedurally applicable.

[2]Again, at that point the case was still to be tried to a jury, so a motion for judgment as a matter of law was procedurally applicable.

in the sum of $55,000.00.

Defendants now move for judgment as a matter of law, contending that, as a matter of law, plaintiffs are not entitled to recover the withheld tips and related liquidated damages. The court has heard oral argument on this motion.

Plaintiffs move for an award of $375,548.40 in attorney's fees, $10,728.48 in nontaxable expenses, and $1,369.45 in taxable costs. Defendants oppose this motion in part. Plaintiffs also move for an award of $7,500 as a service fee for Williams. Defendants have not responded to this motion. The court is deciding these motions on the briefs.

II

The court turns first to plaintiffs' arguments in support of their assertion that defendants' motion for judgment as a matter of law should be dismissed due to procedural errors.

A

Plaintiffs maintain that defendants are not entitled to judgment as a matter of law under Rule 50(a) because the parties tried this case in a bench trial and Rule 50(a) only applies to jury trials. Defendants respond that the court can treat their motion for judgment as a matter of law as a motion for judgment on partial findings under Rule 52(c). Defendants also contend that they have repeatedly disputed that plaintiffs are entitled to damages in the form of withheld tips and that the court indicated that it would consider this argument post-judgment.

Plaintiffs are correct that Rule 50's standard does not apply to bench trials. *See* Rule

- 4 -

50(a)(1) ("If a party has been fully heard on an issue during a *jury trial* . . . :" (emphasis added)).   But the court disagrees with plaintiffs' position that the court must dismiss defendants' motion because they moved for relief under Rule 50.  Instead, the court construes defendants' motion for judgment as a matter of law as a motion for judgment on partial findings under Rule 52(c).  *See Kaneka Corp. v. JBS Hair, Inc.*, 2013 WL 12190524, at *3 (N.D. Tex. Aug. 30, 2013) (Solis, J.) ("Where, as here, the court acts as the fact finder on an issue, a motion styled under Rule 50(a) is more appropriately treated as a motion for partial judgment pursuant to Federal Rule of Civil Procedure 52(c)."); *Fox v. Wardy,* 2006 WL 504924, at *1 n.1 (W.D. Tex. Feb. 3, 2006) (same); *W. Trading v. Bell Avon*, 1996 WL 101404, at *1 (5th Cir. Feb. 26, 1996) (per curiam) ("The district court granted judgment as a matter of law under Fed. R. Civ. P. 50(a), applicable to jury trials.  However, because this case was tried before the bench, we will review the judgment as one granted under Fed. R. Civ. P. 52(c) . . . .").

## B

Plaintiffs next contend that defendants are bound by their position in the Pretrial Order.  They maintain that defendants conceded in the Pretrial Order that plaintiffs were entitled to an award of misappropriated tips.  Defendants respond that the portion of the Pretrial Order on which plaintiffs rely was merely a summary of the issues that the jury would hear and not a concession that plaintiffs were entitled to these damages.  Defendants also request that, if the court does find that defendants' statement in the Pretrial Order was an admission, it modify the Pretrial Order to remove this language.

The court concludes that defendants did not stipulate in the Pretrial Order that plaintiffs are entitled to damages in the form of withheld tips. The Pretrial Order provides, in relevant part:

> [T]he issues remaining to be decided are the amount of actual and liquidated damages as well as attorney fees that are reasonable and necessary for this matter. Specifically, as it relates to the FLSA damages, the jury must determine (1) the actual number of hours worked by each individual plaintiff; and (2) the specific dollar amount of tips each individual plaintiff contributed to the tip pool. Once the jury has calculated this information, the Court will then utilize this information to calculate the actual damage number.

Pretrial Order at 3.

But this part of the Pretrial Order is found in defendants' summary of the issues, and is not a stipulation. And although the Pretrial Order states that the jury must determine "(1) the actual number of hours worked by each individual plaintiff; and (2) the specific dollar amount of tips each individual plaintiff contributed to the tip pool," it also provides that "the Court will then utilize this information to calculate the actual damage number." *Id.* The court concludes that this statement, as relevant here, acknowledges that the fact question—what is the dollar amount of the withheld tips—would be submitted to the jury, but that the question of law—whether plaintiffs were entitled to withheld tip damages under the FLSA—would be decided by the court. *See, e.g., Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 213 (5th Cir. 1991) ("A trial court has great discretion in interpreting a pretrial order.").

Additionally, although other filings in this case cannot abrogate a clear provision of

- 6 -

the Pretrial Order, the parties' other pretrial filings corroborate that defendants did not intend by the summary of the issues to stipulate that plaintiffs were entitled to withheld tip damages. For example, on July 11, 2021 the parties filed a joint stipulation—intended to eliminate the need for a jury trial—in which they stipulated "to the total amount of misappropriated tips that Defendants did not allow Plaintiffs to retain," but in which defendants simultaneously "reserve[d] the right to challenge whether Plaintiffs are legally entitled to recover misappropriated tips as part of the judgment to be entered in this matter."  Jt. Stip. at ¶¶ 2, 3.

The court therefore concludes that defendants did not stipulate in the Pretrial Order that plaintiffs were entitled to recover withheld tips.

### III

The court now considers defendants' motion for judgment on partial findings under Rule 52(c).

### A

Rule 52(c) provides:

> Judgment on Partial Findings.  If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however, decline to render any judgment until the close of the evidence.  A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

"Rule 52(c), unlike Rule 50, does not require the district court 'to draw any inferences

in favor of the non-moving party' and permits the court to make a determination 'in accordance with its own view of the evidence.'" *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016) (quoting *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006)) (citing Rule 52(c)).

The court is satisfying the requirement of Rule 52(c) that it support its ruling through findings of fact and conclusions of law by setting them out in this memorandum opinion and order. It is concluding for the reasons to be explained that plaintiffs, having been fully heard on the issue of the recoverability of withheld tips, cannot recover such tips under the controlling law.

B

The court first provides an overview of the relevant portions of the FLSA and the circumstances that led to the March 23, 2018 Amendment (the "Amendment") to the FLSA.

The FLSA sets the national minimum wage at $7.25 per hour. 29 U.S.C. § 206(a)(1). But under an exception to the minimum wage requirement, an employer is permitted to pay its "tipped employees" at a reduced rate of $2.13 per hour, provided the employee's tips make up the difference between the reduced rate of $2.13 per hour and the $7.25 per hour minimum wage. *See* 29 U.S.C. § 203(m); *see also Pedigo v. Austin Rumba, Inc.*, 722 F.Supp.2d 714, 721 (W.D. Tex. 2010) (discussing tip exception). This employer discount is commonly referred to as a "tip credit." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015).

As a general rule, the "tip credit" exception can only be claimed by an employer who

shows that (1) the employer informed the employees of the provisions contained in § 203(m) and (2) the tipped employees retained all of their tips.  29 U.S.C. § 203(m).  Moreover, although the statute permits the "pooling of tips among employees who customarily and regularly receive tips," 29 U.S.C. § 203(m)(2)(A), "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit."  *Montano*, 800 F.3d at 189.

Prior to the Amendment, any employer who violated § 206 by improperly claiming a tip credit, and thus failing to pay minimum wage, was "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

In 2010 the Ninth Circuit held that an employer who paid its employees the federally mandated minimum wage—and thus did not take a tip credit—could require employees to participate in a tip pool that included customarily non-tipped employees, without violating § 203(m).  *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580-81 (9th Cir. 2010).  The *Cumbie* panel held that this practice did not violate the FLSA because § 203(m) did not apply to employers who did not take a tip credit.  *Id.*

In 2011 the U.S. Department of Labor ("DOL"), seeking to overrule *Cumbie*, promulgated regulations that extended the tip pooling rules to all employers, including those who did not take a tip credit:

- 9 -

> Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m) . . . .

29 C.F.R. § 531.52 (2011).  The new regulations prohibited tip pooling that violated § 203(m) regardless of whether the employer claimed a tip credit, i.e., regardless of whether the employer paid its tipped employees less than the federally-mandated minimum wage.

After these regulations were issued, courts addressed challenges to their validity.  In one such case, *Oregon Restaurant & Lodging Association v. Perez (ORLA)*, 816 F.3d 1080 (9th Cir. 2016), the Ninth Circuit applied *Chevron* deference and upheld the 2011 regulations.  *ORLA*, 816 F.3d at 1087-90.  The *ORLA* majority held that *Cumbie*'s holding was based on the FLSA's silence with respect to the issue of whether § 203(m) applied to employers who did not take a tip credit, and that the DOL could fill the statutory gap with its regulations. *Id.* at 1088-89.  The majority also held that the 2011 regulations were a reasonable interpretation of § 203(m).  *Id.* at 1089-90.

Judge N.R. Smith dissented, arguing that *Cumbie* was controlling precedent and that § 203(m) "only imposed a condition on employers who take a tip credit, rather than a blanket requirement on all employers regardless of whether they take a tip credit."  *Id.* at 1091-92 (emphasis omitted).  Judge Smith reasoned that, because the statute was clear (as *Cumbie* held that it was), the majority should not have deferred to DOL's interpretation.  *Id.* at 1092-94.

In June 2017 the Tenth Circuit issued an opinion that agreed with Judge Smith's

dissent in *ORLA*.  *Marlow v. New Food Guy, Inc.*, 861 F.3d 1157 (10th Cir. 2017).  The Tenth Circuit concluded that "§ 203(m)'s 'silence' about employers who decline the tip credit is no 'gap' for an agency to fill.  Instead, the text limits the tip restrictions in § 203(m) to those employers who take the tip credit, leaving DOL without authority to regulate to the contrary."  *Id.* at 1164.

In December 2017, in response to Judge Smith's dissent and the *Marlow* decision, the DOL adopted a nonenforcement policy with respect to the 2011 regulation.  Tip Regulations Under the Fair Labor Standards Act, 82 Fed. Reg. 57,395, 57,398-99 (Dec. 5, 2017).  DOL also issued a notice of proposed rulemaking that sought to rescind the 2011 regulations to the extent they applied to employers who did not take a tip credit.  82 Fed. Reg. at 57,395-99.

On March 23, 2018 Congress enacted the Consolidated Appropriations Act, 2018 ("CAA"), which amended the FLSA.  The CAA added a new paragraph to § 203(m) that provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  Consolidated Appropriations Act, Pub. L. 115-141, div. S, tit. XII, sec. 1201(a), § 203(m), 132 Stat. 348, 1148 (Mar. 23, 2018).

Congress also amended § 216(b) to provide damages in the form of withheld tips and an equal amount of liquidated damages for a violation of § 203(m)(2)(B):

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . *Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.*

29 U.S.C. § 216(b) (emphasis added).

## C

Having recounted the relevant history of the FLSA, the court next considers defendants' argument that plaintiffs are not entitled to withheld tip damages under the pre-Amendment FLSA.

### 1

Defendants contend that plaintiffs are not entitled to recover withheld tip damages under the pre-Amendment version of the FLSA. They maintain that "every federal court that addressed this discrete issue before the Amendment, held an FLSA plaintiff could not recover as an element of damages employer retained tips for forced participation in a tip pool arrangement that did not meet the statutory requirements." Ds. Br. at 10 (emphasis omitted). Defendants also posit that there would have been no need for Congress to amend § 216(b) if plaintiffs were already entitled to withheld tip damages prior to the Amendment.

Plaintiffs respond that they are entitled to damages in the form of their withheld tips because plaintiffs who are paid less than minimum wage and are forced to participate in an

improper tip pool have always been able to recover damages in the form of their misappropriated tips.  Plaintiffs assert that *Cumbie*, *ORLA*, and the DOL's regulations address a different question entirely—whether employees who are paid *more than* minimum wage are entitled to retain their tips under § 203(m).  According to plaintiffs, the debate over this question and the Amendment "did not change the substantive law as it existed and applied to Plaintiffs in this case—the FLSA prohibited (and still prohibits) an employer from retaining an employee's tips whether the employer pays *less than* minimum wage (i.e. takes a tip credit)."  Ps. Resp. at 15.

Defendants reply that plaintiffs are incorrect that they are entitled to their withheld tip damages under the pre-Amendment FLSA.  They contend that all of the cases that plaintiffs cite in support of this proposition either did not actually hold that plaintiffs are entitled to withheld tip damages or are distinguishable.

2

The court agrees with defendants that plaintiffs are not entitled to recover their withheld tips under the pre-Amendment FLSA.

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  The court's "inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted).  "Unless exceptional circumstances dictate otherwise, '[w]hen [the court] find[s] the terms of a statute unambiguous, judicial inquiry is complete.'"

*Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

The plain text of the pre-Amendment FLSA is clear.  Section 216(b) of the FLSA provides a "right of action" against "[a]ny employer who violates the provisions of section 206," which establishes minimum wage obligations.  29 U.S.C. § 216(b).  And § 203(m) provides that an employers can pay its "tipped employees" at a reduced rate of $2.13 per hour and use the "tip credit" to satisfy the minimum wage requirements, so long as the employer complies with the requirements of § 203(m).  *See* 29 U.S.C. § 203(m).  Thus when an employer violates the conditions of the tip credit—as defendants uncontestedly did here—the employer fails to pay its employees the minimum wage, in violation of § 206.

But the remedy for a violation of § 206 is provided by § 216(b)—not § 203(m).  And the pre-Amendment text of § 216(b) clearly limits the employee's recovery for such violations to the "*amount of their unpaid minimum wages* . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b) (emphasis added).  The court therefore concludes that § 203(m) provides conditions on whether an employer can claim a tip credit, but it does not provide a separate cause of action or remedy when an employer violates those conditions.  Instead, when an employer improperly claims a tip credit—violating the minimum wage requirements—the employee's damages are limited to the remedies provided by § 216(b).[3]

---

[3]This interpretation arguably produces an undesirable result.  But Congress may have thought that the availability of liquidated damages in addition to unpaid minimum wages

Although there is little case law that directly addresses this question, this conclusion is supported by the majority of persuasive case law.  Contrary to plaintiffs' assertion that employees who were paid less than minimum wage have always been able to recover their misappropriated tips, other courts have held that plaintiffs' damages for a violation of § 206 were limited to the difference between the plaintiffs' hourly wage and the federally-mandated minimum wage—i.e., the tip credit amount.  *See e.g., Miller v. Garibaldi's Inc.*, 2018 WL 1567856, at *4 (S.D. Ga. Mar. 30, 2018) (collecting cases); *Mould v. JJG Food Serv., Inc.*, 2014 WL 2768635, at *4-6 (D. Md. June 17, 2014)[4] (holding that where tip-pooling arrangement fails to meet FLSA requirements, "the appropriate measure of damages is the difference between the wages paid and the applicable minimum wage," and plaintiff "is not entitled to recover his tips in damages").[5]  And the cases that plaintiffs cite to the contrary

_____

provided a sufficient remedy, or may have limited the remedy as a legislative compromise to secure enactment of any remedy at all.  And in any case, in 2018 Congress enhanced the remedy by amending § 216(b) via the CAA to provide for the recovery of withheld tips (and corresponding liquidated damages).

[4]As plaintiffs point out, the relevant section in *Mould* seems to be addressing a violation of Maryland state law.  But the court's reasoning is clearly based on its interpretation of the text of the FLSA.  *See Mould*, 2014 WL 2768635, at *4–6.

[5]*See also Dalley v. CG RYC, LLC*, 2018 WL 7629048, at *2 (S.D. Fla. Aug. 31, 2018) ("Importantly, employees may recover only up to the tip credit and not the actual tips."); *Gurule v. Land Guardian, Inc.*, 2017 WL 6885417, at *5 (S.D. Tex. July 7, 2017) ("Thus, the only remedy available to Plaintiffs would be under section 216(b), which does not allow for the recovery of lost tips.), *aff'd on other grounds*, 912 F.3d 252 (5th Cir. 2018); *Ventura v. Bebo Foods, Inc.*, 738 F.Supp.2d 8, 17 (D.D.C. 2010) ("If an employer fails to comply with the tip credit requirements, the employer is liable to tipped employees for the difference between the minimum wage and the wage paid to tipped employees, regardless of the tips that tipped employees received.").

are either unpersuasive or distinguishable.[6]

The court therefore holds that plaintiffs are not entitled to recover their withheld tips as damages under the pre-Amendment version of the FLSA.

D

The court next considers whether the 2018 Amendment to the FLSA applies in this case.

1

Plaintiffs filed this lawsuit on March 5, 2018. The CAA was enacted on March 23, 2018. Defendants maintain that the Amendment cannot be applied retroactively to this case. They contend that "[t]here is nothing in the Amendment indicating a congressional intent to apply it retroactively." Ds. Br. at 16. And defendants also argue that, even if Congress' intent is unclear, the Amendment should not be applied retroactively because it would create new liability for defendants that they were not aware of at the time plaintiffs' causes of action accrued.

Plaintiffs respond that the amendment to § 216(b) is remedial and should be applied

_____

[6]Plaintiffs rely on cases that are distinguishable because they involve dancers who were paid no hourly wage at all and recovered tip-out fees or house fees. *See, e.g., Reich v. Priba Corp.*, 890 F. Supp. 586, 594-95 (N.D. Tex. 1999) (Fish, J.). Plaintiffs also rely on cases that are unpersuasive either because the court awarded withheld tips on a motion for default judgment, *see, e.g., Farasat v. RP Managing Partners, LLC*, 2016 WL 304871, at *1, *6 (N.D. Tex. Jan. 26, 2016) (Lindsay, J.), or because it is unclear whether the court awarded plaintiffs withheld tip damages under the FLSA or under New York state law—which allows recovery of such damages, *see, e.g., Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *25 (S.D.N.Y. Feb. 1, 2007), *abrogated on other grounds by Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012).

retroactively. They maintain that § 216(b) should be given retroactive effect because it "merely codified the law as it already existed and applied to employers who paid their employees less than minimum wage," and "does not impose new duties on Defendants." Ps. Resp. at 29. Plaintiffs do not seek retroactive application of § 203(m)(2)(B), however, because they contend that they "were covered by § 203(m) even prior to the enactment of § 203(m)(2)(B)" and therefore do not require retroactive application of § 203(m)(2)(B) to succeed on their claims. Ps. Resp. at 28.

                                                    2

   The Supreme Court has recognized a "presumption against retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Courts follow a two-step inquiry when evaluating whether a federal statute applies retroactively. "First, reviewing courts must 'determine whether Congress has expressly prescribed the statute's proper reach.'" *Terrazas-Hernandez v. Barr*, 924 F.3d 768, 772 (5th Cir. 2019) (quoting *Landgraf*, 511 U.S. at 280). If Congress has addressed the issue, the court's inquiry ends, and the statute is applied as Congress intended. *Id.* at 772-73. If Congress' intent is unclear, "courts proceed to step two and determine whether retroactive application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 773 (quoting *Landgraf*, 511 U.S. at 280).

   Plaintiffs have failed to demonstrate that Congress expressly indicated that the Amendment applies retroactively. Plaintiffs argue only that the Amendment to § 216(b) was

intended to apply retroactively because it merely codifies the law as it already existed prior to the Amendment.  But the law was, at best, unclear about whether plaintiffs were entitled to withheld tip damages prior to the Amendment.  The court therefore holds that Congress did not clearly express that it intended that the Amendment apply retroactively.

Because Congress has not "expressly prescribed" the proper reach of the Amendment, the court will not apply it retroactively if doing so would increase defendants' liability for past conduct, or if doing so would impose new duties with respect to completed transactions. Plaintiffs again argue that applying the Amendment retroactively would not impose new duties on defendants because plaintiffs were already entitled to their tips under the pre-Amendment version of the FLSA.  As the court has already noted, plaintiffs' position is incorrect; therefore, applying the Amendment retroactively would impose new duties on defendants.   This is so because applying the Amendment retroactively would make defendants liable for damages that they would not be liable for under the pre-Amendment version of the FLSA.  The court therefore applies the presumption against retroactivity and holds that the Amendment does not apply in this case.

Although there is very limited case law that addresses this question, what does exist also supports the court's conclusion that the Amendment does not apply retroactively.  As one opinion explained, "the problem with [plaintiff's] claim [for wrongfully withheld tips] is that the portion of section 203(m) upon which [plaintiff] relies was not enacted until March 23, 2018[,]" and there is no "indication[] that Congress intended these March 23, 2018, amendments to apply retroactively." *Rodriguez v. City Buffet Mongolian Barbeque, Inc.*,

2020 WL 2476043, at *5 (M.D. Fla. Apr. 22, 2020), *report and rec. adopted*, 2020 WL 2473452 (M.D. Fla. May 13, 2020) (discussing amendments to § 203(m)).  And other courts have reached similar conclusions.  *See, e.g., Collins v. Treasure Bay LLC*, 2019 WL 7875053, at *2 (S.D. Miss. Aug. 5, 2019) ("There is, however, no indication that the amendment applies retroactively.").  The only case that plaintiffs cite to support their contention that the Amendment applies retroactively is one that addresses the retroactivity of regulations by the United States Department of Health and Human Services, not the FLSA.  *See Vista Health Plan, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2020 WL 6380206, at *7-8 (W.D. Tex. Sept. 21, 2020).

The court therefore holds that plaintiffs are not entitled to their withheld tip damages under the pre-Amendment FLSA, and that the Amendment does not apply retroactively.  The court therefore grants defendants' motion for judgment on partial findings and amends the judgment to remove the award of $55,000 in withheld tip damages and the corresponding award of $55,000 in liquidated damages.

IV

The court next considers plaintiffs' motion for attorney's fees.

A

Plaintiffs move for $375,548.40 in attorney's fees.  They seek attorney's fees for three attorneys: Drew N. Herrmann, Esquire ("Drew"), at the hourly rate of $450, Pamela G. Herrmann, Esquire ("Pamela"), at the hourly rate of $395.00, and Jerry Murad, Jr., Esquire ("Murad"), at the hourly rate of $495.00.  Plaintiffs also seek fees for Herrmann Law,

PLLC's ("Herrmann Law's") law clerk and legal support staff, both at the rate of $145 per hour.  To support these rates, plaintiffs rely on declarations from Murad and Drew as well as from lawyers in the community.

Plaintiffs maintain that the three attorneys, the law clerk, and the legal support staff worked a combined total of 1,153.20 hours on this case.  They assert that they voluntarily "made line-by-line adjustments to various time entries for duplicative or excessive time entries," and "then further reduced all time incurred by an additional 10.00%," which resulted in a total reduction of "16.54% of all hours incurred."  Ps. Br. at 16.  As a result, plaintiffs seek attorney's fees for 477.50 hours for Drew, 79.34 hours for Pamela, 201.51 hours for Murad, 158.54 hours for Hermann Law's law clerk, and 45.54 hours for Hermann Law's legal support staff, representing $275,800.95 in fees for Herrmann Law and $99,747.45 in fees for Murad ($375,548.40 in total).

The court's review of the record, however, reveals an error in plaintiffs' request.  As noted above, plaintiffs attribute 45.54 hours (post-reductions) to their legal support staff and 158.54 hours (post-reductions) to their law clerk.  Based on how these hours are recorded in Herrmann Law's billing record,[7] they appear to be flipped (i.e., the hours requested for the law clerk and attributable to the legal support staff, and vice versa).  The court therefore finds that plaintiffs are requesting 158.54 hours (post-reductions) for their legal support staff and 45.54 hours (post-reductions) for their law clerk.  Because both the law clerk and the legal

---

[7]Time billed by Herrmann Law's law clerk (Megan Weierhausen) is coded using the initials "MW," whereas time billed by the legal support staff is coded using the letters "LSS."

support staff have the same requested hourly rate, this does not change plaintiffs' requested loadstar.

Defendants object to plaintiffs' application on the following grounds: (1) the hourly rates for Drew, Pamela, and Herrmann Law's staff are excessive;[8] (2) Herrmann Law's time is excessive; (3) Murad's time is duplicative of Herrmann Law's time; and (4) plaintiffs are not entitled to any fees for time incurred after defendants made a favorable settlement offer on May 3, 2021.

## B

"Under the FLSA, an employer who violates the statute is also required to pay attorney's fees." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)).  The Fifth Circuit "uses the lodestar method to calculate an appropriate attorney's fee" under the FLSA.  *Id.* (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)) (internal quotation marks omitted).  "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for [the] work."  *Id.*  "The court should exclude all time that is excessive, duplicative, or inadequately documented."  *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010).  "[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson [v. Georgia Highway Express, Inc.*, 488

---

[8]Defendants do not object to Murad's requested hourly rate.

F.2d 714, 717-19 (5th Cir. 1974)].'" *Black*, 732 F.3d at 502 (quoting *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006)).[9]  The fee applicant bears the burden of substantiating both the requested hours and the hourly rates.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## C

To calculate the lodestar amount, the court first determines what are the reasonable hourly rates.

## 1

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).  As the fee applicant, plaintiffs "bear[] the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

---

[9]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.  "The Supreme Court has 'barred any use' of the sixth *Johnson* factor."  *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)).  And the second factor generally cannot be used as a ground for enhancing the award.  *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11). "[T]rial courts are considered experts as to the reasonableness of attorney's fees . . . ." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

2

Defendants maintain that Drew's and Pamela's hourly rates are unreasonable, and they ask the court to reduce their hourly rates from $450 to $300 for Drew and from $395 to $225 for Pamela. To support these requests, defendants rely on a declaration of their lead counsel, Michael Martinez, Esquire ("Martinez").

Drew has been licensed in Texas since November 2014. Accordingly, at the commencement of this case (March 2018), he had been licensed for fewer than four years, and at the time of the bench trial (July 2021), he had been licensed for fewer than seven years. Pamela has been licensed in Texas since May 2017. Thus at the commencement of this case, she had been licensed for less than one year, and, at the time of the bench trial, she had been licensed for fewer than five years. According to the State Bar of Texas 2015 Hourly Fact Sheet,[10] the median hourly rate in Dallas for an attorney with three to six years and with seven to ten years of experience is $250, and the median hourly rate for a Dallas

---

[10]The court may properly consider the Fact Sheet as a basis for determining a reasonable hourly rate. *See, e.g., Jiwani v. United Cellular, Inc.*, 2014 WL 4805781, at *5 (N.D. Tex. Sept. 29, 2014) (Toliver, J.) (taking judicial notice of State Bar of Texas, Department of Research & Analysis' 2011 Hourly Fact Sheet as a starting point for ascertaining an appropriate hourly market rate for plaintiff's counsel).

- 23 -

attorney with two years of experience or less is $217.00.[11]  Plaintiffs do not produce any

cases in which Pamela has been awarded a fee greater than these prevailing rates.[12]

The court also notes that the undersigned and other judges of this court have awarded

hourly rates of between $230 and $350 to attorneys of similar or greater experience in FLSA

cases.  *See Meadows v. Latshaw Drilling Co.*, 2020 WL 291582, at *3 (N.D. Tex. Jan. 21,

2020) (Godbey, J.) (approving "attorneys' rates rang[ing] from $275 to $410 for 3.5 to 21

years of experience"); *Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *3-4 (N.D.

Tex. Dec. 14, 2017) (Fitzwater, J.) (awarding $350 per hour to attorney with 11 to 25 years

of experience and $230 per hour to attorney with 3 to 6 years of experience); *Gibbs v. Parr

Mgmt., LLC*, 2013 WL 2355048, at *2 (N.D. Tex. May 29, 2013) (Lindsay, J.) (awarding

$350 per hour to attorney who had been primarily practicing employment and labor law for

the past 12 years).

Accordingly, considering this information, and based on the court's expertise in

determining reasonable attorney's fees, the court finds that $300 per hour is reasonable for

an attorney with Drew's level of experience and $225.00 per hour is reasonable for an

---

[11]*See* State Bar of Texas, 2015 Hourly Rate Fact Sheet, available at
https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/Conten
tDisplay.cfm&ContentID=34182 (last visited November 30, 2021).

[12]Plaintiffs cite a case in which Drew was awarded an hourly rate of $395.00, *see
Jenkins v. Kroger Texas L.P.*, No. 4:219-CV-00245, order at 2 (S.D. Tex. July 26, 2021)
(order), but this case is unpersuasive because it is from the Southern District of Texas, which
has different regional billing rates than the Dallas area, and because the opposing party in
that case only objected to the number of hours billed, and not to Drew's requested hourly
rate.

attorney with Pamela's level of experience.

3

The court next considers the reasonable rate for Herrmann Law's law clerk and legal support staff.  Defendants argue that Herrmann Law's law clerk's hourly rate should be reduced to $50 because plaintiffs provide no details about this individual's qualifications. Defendants also contend that plaintiffs should not be allowed to recover any fees for their legal support staff because they have not specified the qualifications of the staff in question.

The court disagrees with defendants that plaintiffs have provided no detail about Herrmann Law's law clerk.  In his declaration, Drew avers that the law clerk was a 2021 graduate of Texas A&M University School of Law and that she worked for Herrmann Law part-time during the school year and full-time during the summer months of 2019 and 2020. The court finds, however, that the requested hourly rate of $145.00 is unreasonable for a law student in the circumstances of this case, and it reduces the law clerk's hourly rate to $85.00. *See Rodriguez v. Mech. Tech. Servs., Inc.*, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015) (awarding hourly rate of $85.00 to student law clerks); *Carr v. Astrue*, 2011 WL 5985292, at *2 (N.D. Tex. Nov. 28, 2011) (Ramirez, J.) (awarding $75.00 per hour for a student law clerk).

Plaintiffs do not specify the qualifications of their "legal support staff," although they do refer to them as paralegals or legal assistants.  Paralegal fees are recoverable on the theory that legal assistants can provide necessary services at a lower rate than would be charged by an attorney. *See Cook v. Brown*, 68 F.3d 447, 453 (Fed. Cir. 1995) (explaining that courts

- 25 -

have allowed recovery of fees for paralegals and law clerks under fee-shifting statutes "on the theory that their work contributed to their supervising attorney's work product, was traditionally done and billed by attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs").  But because plaintiffs have not demonstrated that their legal support staff hold any qualifications that would justify a higher rate, the court determines that their reasonable hourly rate is $90.  *See Castro*, 2017 WL 6381742, at *11 (awarding fees for legal assistant at rate of $90 per hour); *Arriaga v. Califco, LLC*, 2013 WL 5928852, at *1 (N.D. Tex. Nov. 5, 2013) (Fitzwater, C.J.) (holding that $90 per hour was reasonable rate for paralegal).

## D

The court next determines the number of hours that were reasonably expended by plaintiffs' counsel and the other personnel for whom fees are sought.

### 1

Defendants object generally to any fees or costs billed after May 3, 2021—the date defendants made a settlement offer to plaintiffs.  Plaintiffs respond that they rejected the settlement offer both because it contemplated a lengthy payment plan and totaled less than what plaintiffs would eventually recover in damages, attorney's fees, and costs.[13]

---

[13]The settlement offered plaintiffs a total of $450,958.01 in compensation, comprised of $230,958.01 in damages, $90,000 in additional compensation for each employee, $15,000 in additional compensation for Williams, and $125,000 in attorney's fees and costs.

In the context of an offer of judgment made pursuant to Rule 68,[14] the Fifth Circuit has held that, under fee-shifting statutes such as § 216(b), a court should consider "whether the party would have been *more* successful had his attorney accepted a Rule 68 offer instead of pressing on to trial." *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018) (emphasis in original). The Fifth Circuit has also stated that "this potential measure of lack of success is one factor among many that a district court may consider in exercising the discretion the [fee-shifting] statute gives it." *Id.* (alteration in original) (quoting *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014)).

The court concludes, however, that defendants have failed to demonstrate that plaintiffs are not entitled to *any* fees or costs after rejecting the settlement offer. First, even in the context of a rejected Rule 68 offer, the Fifth Circuit's decision in *Gurule* does not establish a brightline rule that no fees are recoverable after a Rule 68 offer is rejected: rather, *Gurule* explains that the rejection of such an offer is one of many factors that a district court may consider when weighing a prevailing party's degree of success. *See id.* at 261.

Second—and more important—the settlement offer in this case was not made under Rule 68. Other courts have rejected a brightline rule that no costs or fees are recoverable after a non-Rule 68 settlement offer is rejected. *See Berkla v. Corel Corp.*, 302 F.3d 909, 922

---

[14]Under Rule 68, if an offeree rejects a timely pretrial settlement offer and the judgment finally obtained is "not more favorable than the unaccepted offer," the offeree is required to "pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). But "Rule 68 does not preclude a fee award in FLSA cases, despite the prevailing plaintiff's previous rejection of a better offer." *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 260 (5th Cir. 2018) (emphasis omitted).

(9th Cir. 2002) ("[A]bsent a Rule 68 offer of judgment, a plaintiff's failure to accept a settlement offer that turns out to be less than the amount recovered at trial is not a legitimate basis for denying an award of costs. To hold otherwise would render Rule 68 largely meaningless."); *Ortiz v. Regan*, 980 F.2d 138, 140-41 (2d Cir. 1992) (finding that rejection of non-Rule 68 settlement offer should not reduce an otherwise appropriate fee); *see also McKelvey*, 768 F.3d at 498 ("We need not confront the separate and more difficult question of whether trial courts outside Rule 68 may rely on a prior settlement offer to deny all costs incurred after the offer (as the Rule would require).  Perhaps Rule 68 precludes *that* type of reduction to the lodestar." (emphasis in original)).

Defendants could have made an offer under Rule 68, but they opted not to.  Thus the court rejects defendants' contention that no fees or costs should be awarded after the date plaintiffs' rejected the settlement offer.

Assuming *arguendo* in this non-Rule 68 context that the court should consider the rejected settlement offer as a factor when weighing plaintiffs' degree of success, the court declines to reduce the lodestar amount on this basis.  Plaintiffs maintain that they rejected the settlement offer because it provided for a payment plan rather than a lump sum, and they had concerns about whether defendants would actually pay the settlement.  Nothing in the record contradicts plaintiffs' concerns, and the court declines to reduce the attorney's fees requested based on plaintiffs' seemingly reasonable justification for rejecting the settlement.

2

Defendants maintain that Murad's time is duplicative of lead counsel's time. They contend that much of his time was spent "reviewing" the work of others, in discussions with lead counsel, or leaving messages for defendants' counsel. Plaintiffs respond that much of the time that defendants contest as "duplicative" was already voluntarily written off in plaintiffs' request for attorney's fees or was already accounted for in the percentage reduction that plaintiffs applied to their hourly rates. Plaintiffs also contend that Murad's work was not duplicative because, for example, he independently drafted sections of plaintiffs' motions and was the sole attorney for plaintiffs at a hearing held on November 19, 2019.

As noted above, the court should exclude all time that is duplicative. *Jimenez*, 621 F.3d at 379-80. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson*, 488 F.2d at 717. This court has disallowed, for example, time expended by multiple attorneys who attended trial unnecessarily. *See, e.g., Barrow*, 2005 WL 6789456, at *15 (disallowing as duplicative fees for two of four attorneys who represented plaintiff at trial where plaintiff failed to meet her burden of demonstrating why it was necessary for four attorneys to attend trial).

Having reviewed the billing records, the court agrees with plaintiffs that defendants have failed in their objection to fully account for the time that plaintiffs voluntarily wrote off when moving for attorney's fees. But the court agrees with defendants that much of the time Murad billed (and not already written off by plaintiffs) appears to be duplicative of time

billed by Herrmann Law or otherwise excessive.  For example, in July 2021 both Murad and Herrmann Law billed hours related to preparing for the pretrial conference, attending the pretrial conference, trial preparation, and attending the bench trial.  There is no apparent reason why it was necessary for plaintiffs to be represented at trial by three attorneys, especially given that the parties had largely stipulated to the disputed facts before trial.

Additionally, the court agrees with defendants that Murad billed other excessive and repetitive time.  For example, Murad billed over 58 hours related to "review."  *See* Ps. App. at 99-116.  Some of this time is also duplicative of time billed by Drew.  Although the court recognizes that counsel needs to devote time to reviewing the filings in a case, it finds that the time billed by Murad here was excessive.  Plaintiffs have also failed to establish that it was necessary for three different attorneys to work on this case, which involves only 19 class members and—except for the question whether withheld tips are recoverable—relatively straightforward issues of law.

The court therefore applies an additional reduction of 20% to the time billed by Murad.  In order to avoid reducing Murad's fees in a manner that is duplicative of the 10% reduction and line-by-line adjustments already applied by plaintiffs, the court calculates the additional 20% reduction based on Murad's requested hours post-adjustments (20% of 201.51).  The court therefore reduces Murad's hours to 161.21 (201.51 minus 40.3).

3

Defendants contend that Herrmann Law's time billed is unreasonable or excessive. They maintain that the following time entries are unreasonable or excessive: (1) the hours

spent on a motion to compel; (2) the discussions with experts who were never designated in this case; (3) the hours spent on plaintiffs' motion for summary judgment; and (4) the time spent calculating misappropriated tips and creating a damages model.  Martinez also highlights the hours on plaintiffs' time report that he avers represent this excessive or unnecessary time.

Plaintiffs respond that defendants have not provided sufficient bases for reducing their time billed because defendants merely rely on conclusory assertions by Martinez that the time spent was excessive.  Plaintiffs also assert that the time spent calculating damages and creating spreadsheets would not have been necessary had defendants not refused to provide the amount of withheld tips in plaintiffs' requested format.

The court has reviewed the billing record and determines that only some of the time defendants object to is unnecessary or excessive.  First, the court disagrees that the time spent on plaintiffs' motion to compel was excessive.  The court's review of the record shows that Drew billed 11.3 hours related to the motion to compel.  But plaintiffs have already applied an overall 10% reduction in the exercise of billing judgment, and they therefore only seek to recover 9.9 hours (just over one standard 8-hour work day) related to the motion to compel.  The court does not find this to be excessive in the specific context of this case, and it declines to reduce these hours.

Next, the court agrees with defendants that the time billed for discussion with an expert who was not retained or designated is unnecessary, and thus reduces Drew's time by .8 hours.

The court also determines that the hours Drew billed on plaintiffs' motion for summary judgment are excessive. The court's review of the record shows that Drew billed approximately 71.5 hours (approaching two full 40-hour work weeks) related to the preparation of plaintiffs' summary judgment motion. And this time does not even account for the entire time spent drafting the motion, because plaintiffs aver that Murad drafted the affirmative defense section. Even considering the 10% reduction that plaintiffs applied, this is an excessive amount of time for an attorney of Drew's experience to spend on a summary judgment motion in a mostly straightforward FLSA case. The court therefore reduces Drew's hours for preparing the summary judgment motion by an additional 23.5 hours.

Finally, the court considers whether the time spent calculating the damages and creating a spreadsheet model is excessive. The court's review of the billing record shows that the legal support staff billed approximately 115.5 hours (almost 3 standard 40-hour work weeks) related to calculating damages and creating the damages model. The law clerk billed an additional approximately 32.8 hours analyzing receipts and calculating damages. Drew spent approximately 17.7 hours reviewing documents related to the damages model and updating the spreadsheet. And Pamela spent approximately 5.1 hours on similar tasks. Even considering the 10% reduction already applied, the court finds that this time is excessive. Thus the court reduces the legal support staff's hours by 3.5 hours, reduces the law clerk's hours by 7.8 hours, reduces Drew's time by 7.7 hours, and reduces Pamela's time by 2 hours.

The court has reviewed the other billing records and finds them to be reasonable. The court therefore reduces Drew's hours to 445.5 (477.5 minus 32), Pamela's time to 77.34

(79.34 minus 2), the legal support staff's hours to 155.04 (158.54 minus 3.5), and the law

clerk's hours to 37.74 (45.54 minus 7.8).

E

The court next considers whether the lodestar fee should be adjusted upward or

downward based on the *Johnson* factors.

There is a "strong presumption that the lodestar award is the reasonable fee."

*Heidtman*, 171 F.3d at 1044.  Nevertheless, "the court must consider whether the lodestar

amount should be adjusted upward or downward, depending on the circumstances of the case

and after addressing the *Johnson* factors."  *SEC v. AmeriFirst Funding, Inc.*, 2008 WL

2185193, at * 1 (N.D. Tex. May 27, 2008) (Fitzwater, C.J.) (internal quotation marks and

citation omitted).  District courts "need not specifically discuss the *Johnson* factors where

[they have] applied the *Johnson* framework."  *EEOC v. Agro Distribution, LLC*, 555 F.3d

462, 473 (5th Cir. 2009).

Plaintiffs contend that several of the *Johnson* factors support their lodestar calculation,

but they do not argue for an upward or downward adjustment based on the *Johnson* factors.

Defendants do not address the *Johnson* factors in their brief.  The court concludes that,

because neither party has attempted to prove that the lodestar amount should be adjusted

under the *Johnson* factors and because each of the factors was subsumed in the court's

lodestar calculation, such an adjustment is unnecessary.  *See, e.g., Fabela v. City of Farmers

Branch, Tex.*, 2013 WL 2655071, at *9 (N.D. Tex. June 13, 2013) (Fitzwater, C.J.) (finding

no reason to adjust the lodestar based on the *Johnson* factors where the parties did not argue

- 33 -

or offer evidence supporting an adjustment based on the *Johnson* factors).

F

In summary, the court awards $248,011.95 in attorney's fees. This total consists of $133,650 for Drew ($300 times 445.5 hours); $17,401.50 for Pamela ($225.00 times 77.34 hours); $3,207.90 for the law clerk ($85.00 times 37.74 hours); $13,953.60 for the legal support staff ($90 times 155.04 hours); and $79,798.95 for Murad ($495 times 161.21 hours).

V

The court next considers plaintiffs' request for $1,369.45 in taxable costs and $10,728.48 in nontaxable expenses.

A

Plaintiffs move for an award of $1,369.45 in taxable costs. In the judgment in this case, the court awarded plaintiffs their taxable costs of court, as calculated by the clerk of court. The amended judgment does so as well. Because plaintiffs maintain that these costs are taxable, this request should be presented to the clerk of court, as provided in the judgment (and amended judgment) and by local civil rule. *See* N.D. Tex. Civ. R. 54.1.[15] Their motion

---

[15]Rule 54.1 provides:

> A party awarded costs by final judgment or by judgment that a presiding judge directs be entered as final under Fed. R. Civ. P. 54(b) must apply to the clerk for taxation of such costs by filing a bill of costs in a form approved by the clerk. Unless otherwise provided by statute or by order of the presiding judge, the bill of costs must be filed with the clerk and served on any party entitled to such service no later than 14 days after the clerk enters the judgment on the docket.

- 34 -

for taxable costs is therefore denied without prejudice.

B

Plaintiffs move for an award of $10,728.48 in other nontaxable litigation expenses.[16] Defendants do not challenge this request,[17] and the court grants it.

VI

The court next considers Williams' motion for a service award.

A

Plaintiffs request that Williams be awarded the sum of $7,500 for her service as the named plaintiff in this collective action.  Defendants have not responded or objected to this motion.

To decide whether a service award is warranted, courts consider: "(1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) (Rosenthal, J.) (quoting *In re Heartland Payment Sys., Inc. Customer*

---

[16]"In addition to taxable costs listed under 28 U.S.C. § 1920, 'Texas District Courts have also determined that [additional] costs are . . . appropriately awarded to prevailing parties in FLSA cases as part of a reasonable fee.'" *Dobson v. Timeless Rests., Inc.*, 2017 WL 1330164, at *7 (N.D. Tex. Apr. 11, 2017) (Lindsay, J.) (quoting *Alex v. KHG of San Antonio, LLC*, 125 F.Supp.3d 619, 629-30 (W.D. Tex. 2015)).

[17]Defendants only challenge to plaintiffs' request for fees and costs is the assertion that no fees or costs should be awarded after the defendants' May 3, 2021 settlement offer. But the court has already addressed and rejected this argument.  *See supra* § IV(D)(1).

*Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1089 (S.D. Tex. 2012) (Rosenthal, J.)).  In

other courts, a service award of $5,000 is presumptively reasonable.  *See, e.g., Jacobs v. Cal.*

*State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) ("[A]

$5,000 payment is presumptively reasonable.").

      Here, Williams estimates that she spent over 20 hours on this case, excluding her

travel time from Austin to Dallas, and that she has spoken to counsel on over 20 different

occasions.  Williams avers that she maintained contact with plaintiffs' counsel and other opt-

in plaintiffs, that she was involved in the settlement negotiations, and that she has

participated in trial preparation for two different trial settings.  She also declares that this

litigation has interfered with her current work responsibilities.  Because defendants do not

object to the service award, and because the service award amount is not outside of the range

of awards approved by other judges of this court, *see, e.g., Izzio v. Century Golf Partners*

*Management*, 2019 WL 10589568, at *11-12 (N.D. Tex. Feb. 13, 2019) (Lynn, C.J.)

(approving incentive awards ranging from $10,000 to $3,000), *aff'd*, 787 Fed. Appx. 242 (5th

Cir. 2019), the court grants plaintiffs' motion.

*   *   *

      For the foregoing reasons, the court grants defendants' motion for judgment on partial

findings under Rule 52(c).  The court amends the judgment to delete the award of $55,000

in damages in the form of withheld tips and the corresponding award of $55,000 in liquidated

damages.  The court grants plaintiffs' motions for an award of $10,728.48 in nontaxable

litigation expenses and for a $7,500 service fee for Williams, and denies their motion for

taxable costs (without prejudice to their applying to the clerk for taxation of such costs).  The court grants in part and denies in part plaintiffs' motion for attorney's fees, and, in the amended judgment, awards plaintiffs the sum of $248,011.95 in attorney's fees.  An amended judgment is being filed by the court today.

   **SO ORDERED**.

   December 2, 2021.


                              _____
                              SIDNEY A. FITZWATER
                              SENIOR JUDGE